LOUIS SOLOMON, Appellant, *v.* ATLANTIS STEEL PARTITION Co., INC., et al., Respondents.

*Argued October 10, 1945; decided January 17, 1946.*

*George Rosling* for appellant. I. The course of dealings between the parties operated to clear up any uncertainties as to the meaning and effect of the contract and to estop defendant company, the seller, from belatedly claiming a construction inconsistent with said dealings. II. If the contract provisions are ambiguous or obscure, practical construction by the parties controls as to intent. (*Carthage T. P. Mills* v. *Vil. of Carthage,* 200 N. Y. 1.) III. The judgment in replevin was supported by the evidence. (*Stamford Extract Mfg. Co.* v. *Oakes Mfg. Co.,* 9 F. 2d 301; *Kimberly* v. *Patchin,* 19 N. Y. 330; *Gourd* v. *Healy,* 206 N. Y. 423; *Lehman* v. *Mayer,* 68 App. Div. 12; *Marshall* v. *Friend,* 33 Misc. 443, 59 App. Div. 628; *Samson* v. *Rose,* 65 N. Y. 411.)

*William Weisman* and *Norman Laidhold* for respondents. I. The contract was clear and unambiguous. (*Gearns* v. *Commercial Cable Co.,* 293 N. Y. 105; *Zora Realty Co.* v. *Metropole*

*Food Corp.,* 268 App. Div. 493, 294 N. Y. 742; *Skinner* v. *Paramount Pictures, Inc.,* 294 N. Y. 474; *Nau* v. *Vulcan Rail and Construction Co.,* 286 N. Y. 188; *Hopwood Plays, Inc.,* v. *Kempe*, 263 N. Y. 380; *Hutchison* v. *Ross,* 262 N. Y. 381; *Central Union Trust Co.* v. *Trimble,* 255 N. Y. 88.) II. Plaintiff failed to establish that he was entitled to recover in replevin. (*Miller* v. *O'Brien's Fireproof Storage Warehouse, Inc.,* 248 App. Div. 761; *Biegeleisen* v. *Cohen,* 192 N. Y. S. 321; *Meyer* v. *Smith,* 148 App. Div. 840; *Equitable Trust Co. of N. Y.* v. *Majestic Hotel Co., Inc.,* 237 App. Div. 166, 262 N. Y. 486.)

CONWAY, J. The plaintiff, a distributor of fluorescent lighting fixtures, entered into a contract with Atlantis Steel Partition Co., Inc., a manufacturer of fixtures (hereinafter referred to as Atlantis), whereby he agreed to purchase, for the term of one year, all of his requirements from Atlantis. The credit of the plaintiff was good. That of Atlantis was poor by reason of prior financial difficulties. Therefore, it was provided in the contract that Atlantis should have the option either to buy sheet steel in the open market or to require the plaintiff to purchase it, using his credit, and then to turn it over to Atlantis. The price to be charged by the latter for the manufacturing of the fixtures from the steel purchased was to be the same whichever was the purchaser. If Atlantis purchased the steel, it would, of course, pay for it. If plaintiff made the purchase, Atlantis was to repay plaintiff by billing him at the contract price for the fixtures and at the same time crediting him for the steel used in manufacturing them. There was a problem presented to the contracting parties in the event Atlantis exercised its option to have the plaintiff purchase the steel. That was because in the course of manufacture there was a wastage of steel which might run as high as 25%. If Atlantis purchased the steel, there was no problem. It paid for the steel, absorbed the wastage and billed for the fixtures. The wastage would have been figured in the contract price. If the plaintiff purchased the steel with his credit and turned that steel over to Atlantis, he had to be paid for each pound at the agreed price and Atlantis had still to absorb the wastage in the manufacture for, naturally, plaintiff was not required to pay a higher price for the fixtures because he used his own credit to purchase them than if Atlantis had itself made

the purchase. Those matters presented no difficulty. The problem presented involved the steel inventory against which Atlantis wished the wasted steel to be credited, so that it might not be held to *account* for the sheets no longer in the pile by reason of the wastage. A reading of the contract, and particularly three paragraphs which we shall quote, makes clear from the phrasing the existence of the problem and the solution at which the parties arrived, even apart from their conduct as indicated by the exhibits. The following are Paragraphs Third, Ninth and Tenth. In them, the plaintiff is the " Buyer " and Atlantis the " Seller."

" Third: The Seller shall charge and the Buyer shall pay to the Seller for such fluorescent lighting fixture bodies delivered to Buyer, the following prices:

" For fixture sizes up to and inclusive of twenty-five (25) inches in length twelve cents (12¢) per pound.

" For fixtures sizes in excess of twenty-five (25) inches in length and up to and including fifty-four (54) inches in length, eleven (11¢) per pound.

"For fixtures in excess of fifty-four (54) inches in length, special prices will be agreed upon before any order for the fabrication thereof is accepted; the failure to agree upon any such price shall not be deemed a waiver by either party of any of the terms covenants and conditions of this agreement or a default on the part of either party under any terms, covenant and condition of this agreement.

" The above prices are predicated upon a cost of steel to the seller of not more than five cents (5¢) per pound. Should the price of steel rise above five cents per pound, then it is agreed that the Buyer shall absorb such increase and pay to the Seller the amount of such increase in addition to the price above specified."

" Ninth: The Buyer, if called upon by the Seller, shall purchase the necessary steel, if obtainable at market prices, to fabricate all fluorescent lighting fixture bodies ordered by him and said steel shall be delivered to the Seller's premises and shall remain the property of the Buyer whether in its original state or manufactured into a fluorescent fixture body, subject, of course, to the lien of the Seller for any sums which may be due it by virtue of this agreement. (Rider) If the Buyer cannot

purchase the necessary steel at market price, he shall not be liable for damages to the Seller, by reason of non performance herein.

" The Seller agrees to use such steel as may be delivered to it exclusively upon orders received by it from the Buyer and shall keep such steel separate and apart so as to be able to be identified as belonging to the Buyer.

" The Buyer shall have the privilege of inspecting the steel at any time and checking inventory thereof.

" Tenth: Upon making payment for any fluorescent fixture bodies delivered by the Seller to the Buyer, which are fabricated from steel purchased by the Buyer, the Buyer shall pay the price specified in Paragraph ' Third ' of this agreement, less only the actual cost to the Buyer of the steel used in the fluorescent lighting fixture bodies then delivered. It is intended that the Buyer shall only be credited for the cost to him of the steel as such steel is used by the Seller in the delivery of finished fluorescent bodies to the Buyer.

" It is understood by the parties hereto that in fabricating the fluorescent lighting body fixtures from the steel purchased by the Buyer, there will be a loss in cutting the steel or otherwise fabricating it of approximately twenty-five percent (25%). The Seller shall not be held *accountable* for this 25%, and an allowance in that amount will be given to the Seller at any time that an *accounting* for fabricated steel is requested by the Buyer of the Seller for steel purchased by the Buyer and delivered to the Seller's premises to be used as herein contemplated." (Emphasis supplied.)

Paragraph Tenth had two parts. The first dealt with money. The second dealt with steel. Atlantis was quite willing to credit plaintiff " for the cost to him of the steel as such steel is used by the Seller in the delivery of finished fluorescent bodies to the Buyer." What Atlantis apparently feared was that under paragraph Ninth, since it was to use the steel delivered to it and paid for by plaintiff exclusively upon orders received from plaintiff, and to keep " such steel separate and apart so as to be able to be identified as belonging to the Buyer ", the plaintiff might exercise his privilege of inspecting such steel and checking the inventory thereof, and the quantity of steel lost in wastage in fabrication would not be available for inspection.

Therefore, the provision was inserted in paragraph Tenth that Atlantis should not be held *accountable* for that 25% and that an allowance in that amount should be given to it at any time that an *accounting* for fabricated steel was requested by plaintiff " for steel purchased by the Buyer and delivered to the Seller's premises to be used as herein contemplated." For a long period the parties so construed the contract and there was credited to plaintiff *dollars* for payment on steel furnished by him and wasted in fabrication and that amount of wastage in *pounds* was deducted from inventory.

So read, the purpose and intention of the parties is given full play and is clear. There is no ambiguity. On Atlantis' own figures it was possessed of the number of pounds of plaintiff's steel of the value fixed ($6,638.10) in the judgment granted plaintiff at Trial Term and defendant's first counterclaim, therefore, was there properly dismissed.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, DESMOND, THACHER, DYE and MEDALIE, JJ., concur.

Judgment accordingly.